**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>GENERAC POWER SYSTEMS, INC.,<br><br>*Defendant.* | Civil Action No. 2:24-cv-01178<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC (hereafter, "IoT Innovations" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Generac Power Systems, Inc. (hereafter, "Generac" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Generac's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|   | U.S. Patent No. | Title | |
|---|---|---|---|
| A | 6,801,933 (the "'933 patent") | System And Method For Proactive Caching Employing Graphical Usage Description | USTPO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6801933 |
| B | 7,280,830 (the "'830 patent") | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network | USTPO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830 |
| C | 7,304,570 (the "'570 patent") | Methods, Systems, And Computer Program Products For Providing Context-Based, Hierarchical Security For A Mobile Device | USTPO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7304570 |
| D | 7,593,428 (the "'428 patent") | Apparatus, And Associated Method, For Forming, And Operating Upon, Multiple-Checksum-Protected Data Packet | USTPO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |
| E | 7,974,260 (the "'260 patent") | Method Of Transmitting Time-Critical Scheduling Information Between Single Network Devices In A Wireless Network Using Slotted Point-To-Point Links | USTPO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7974260 |
| F | 7,987,270 (the "'270 patent") | Apparatus, And Associated Method, For Facilitating QoS And Bearer Setup In An IP-Based Communication System | USTPO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7987270 |
| G | RE44,742 (the "'742 patent") | Dynamic Message Templates And Messaging Macros | USTPO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44742 |

2.    IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Based on public information and belief, Generac is a corporation organized under the laws of the State of Wisconsin and has its principal place of business located at S45 W29290 WI-59, Waukesha, WI 53189 (Waukesha).

5. Based on public information and belief, Generac may be served through its registered agent for service, Bill Callan, located at located at S45 W29290 WI-59, Waukesha, WI 53189 (Waukesha).

## JURISDICTION AND VENUE

6. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Generac in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Generac is subject to this Court's specific and general personal jurisdiction under due process because of Generac's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and

services provided to individuals in this state and in this District.

10.     Specifically, Generac intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

11.     Generac maintains regular and established places of business in this District.

12.     Generac offers products and services and conducts business in this District as described below.

13.     Generac ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

14.     Generac commits acts of infringement from this District, including, but not limited to, use of the Accused Products (further defined below) and inducement of third parties to use the Accused Products in an infringing manner.

### THE ACCUSED PRODUCTS

15.     IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

16.     Based upon public information, Generac owns, operates, advertises, and/or controls the website https://www.generac.com/ and the domain www.generac.com/, through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services.

17.    Generac uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its remote security and control platform and systems, including but not limited those marketed as Generac's Mobile Link System, Generac's Mobile Link application ("Mobile Link App"),[1] Generac's Mobile Link Connect Accessories (including the Mobile Link Cellular 4G LTE device), Generac's EV Chargers (including the Generac EV Charger Level 2 Plus), Generac's EV Charging application ("Generac EV Charging App"),[2] Generac's server(s) and web portal(s), and Generac's encryption and security technologies, and Generac's cellular, Wi-Fi, and Bluetooth capabilities, and their associated hardware and software and functionalities (hereafter, the "Accused Products"). *See* **Figures 1–5** (below).



Figure 1 (Source: GENERAC, https://www.generac.com/home-standby-generators/wifi-generator-monitoring/)

---

[1]  *See*  https://play.google.com/store/apps/details?id=com.generac.standbystatus&hl=en_US; *see also* https://apps.apple.com/us/app/mobile-link-for-generators/id829129497.
[2]  *See*  https://play.google.com/store/apps/details?id=com.generac.evchargingapp&hl=en_US; *see also* https://apps.apple.com/tr/app/generac-ev-charging/id6479708927.



Figure 2 (Source: https://www.generac.com/globalassets/products/residential/standby-generators/spec-sheets/20-24kw-guardian-standby-generator-specsheet.pdf)



Figure 3 (Source: https://images.thdstatic.com/catalog/pdfImages/08/08d3476d-05ec-4690-8fa8-9b3fa37f9f15.pdf)

| User Interface and Communications | |
| --- | --- |
| Connectivity | Wi-Fi / Bluetooth |
| User Interface | Generac EV Charging App |
| Included Features | Smart Power Sharing |

Figure 4 (Source: https://images.thdstatic.com/catalog/pdfImages/08/08d3476d-05ec-4690-8fa8-9b3fa37f9f15.pdf)



Figure 5 (Source: https://www.generacpowerproducts.com/Parts/Connectivity/Mobile-Link-4G-LTE/p/G0072080)

18.     Generac also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes, including for the smart home functionality provided by the same.  *See* GENERAC, https://www.generac.com/home-standby-generators/wifi-generator-monitoring/; *see also* GENERAC, https://www.generac.com/ev-chargers/level-2-ev-chargers-product-details/.

19.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I.   INFRINGEMENT OF U.S. PATENT NO. 6,801,933

20.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

21.     The USPTO duly issued U.S. Patent No. 6,801,933 (the "'933 patent") on October 5, 2004, after full and fair examination of Application No. 09/644,054, which was filed on August 23, 2000.  *See* '933 patent at 1.

22.     IoT Innovations owns all substantial rights, interest, and title in and to the '933 patent,

including the sole and exclusive right to prosecute this action and enforce the '933 patent against infringers and to collect damages for all relevant times.

23.     The claims of the '933 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components and functionalities that improve server-side application processing and data retrieval using application states.

24.     The written description of the '933 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

25.     Generac has directly infringed one or more claims of the '933 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

26.     Generac has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '933 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,801,933).

27.     For example, as detailed in Exhibit A, the Accused Products include a system, comprising a graphical usage description of a plurality of states of an application; a request handler, which retrieves data based on a request and produces an indication of a current state of a user based on the request; an application state controller, which determines a next state based on the current state and the graphical usage description; and a data generator, which caches data based on the current state and the next state.

28.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '933 patent.

29.     IoT Innovations has been damaged as a result of the infringing conduct by Generac alleged above.  Thus, Generac is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II.  INFRINGEMENT OF U.S. PATENT NO. 7,280,830

30.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

31.     The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004.  *See* '830 patent at p. 1.

32.     IoT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

33.     The claims of the '830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of automatic registration of a new device through the establishment of a home relationship with a network server.

34.     The written description of the '830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

35.     Generac has directly infringed and continues to directly infringe one or more claims of the '830 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

36.     Generac has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 29 of the '830 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830).

37.     For example, as detailed in Exhibit B, the Accused Products include a network, comprising: a network server; and a new wireless device coupled to the network server, wherein the new wireless device has a home relationship with the network server, such that no additional configuration is required by a user of the new wireless device to communicate over the network once the relationship is established, and wherein the network server identifies the new device as an owned device, wherein the owned device is previously known to the network server, wherein registration information is automatically obtained for the new device, wherein a connection is established between the network server and a registration server, and wherein the registration information is sent from the network server to the registration server.

38.     Upon information and belief, Generac has also indirectly infringed the '830 patent by inducing others to directly infringe the '830 patent.  Generac has induced end-users, including, but not limited to, Generac's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '830 patent by providing or requiring use of the Accused Products.  Generac took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '830 patent, including, for example, claim 29 of the '830 patent.  Such

steps by Generac included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on its website on how to use the Accused Products in an infringing manner. Generac is performing these steps, which constitute induced infringement with the knowledge of the '830 patent and with the knowledge that the induced acts constitute infringement. Generac is aware that the normal and customary use of the Accused Products by others would infringe the '830 patent. Generac's inducement is ongoing.

39.     Upon information and belief, Generac has also indirectly infringed by contributing to the infringement of the '830 patent. Generac has contributed to the direct infringement of the '830 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '830 patent, including, for example, claim 29 of the '830 patent. The special features constitute a material part of the invention of one or more of the claims of the '830 patent and are not staple articles of commerce suitable for substantial non-infringing use. Generac's contributory infringement is ongoing. Generac's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Generac.

40.     Generac's direct infringement of one or more claims of the '830 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

41.     Upon information and belief, Generac has a policy or practice of not reviewing the

patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

42.     Upon information and belief, Generac willfully blinded itself to the existence of the '830 patent and Generac's infringement, but Generac had actual knowledge of the '830 patent since at least the time of receiving the original complaint in this action.

43.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '830 patent.

44.     IoT Innovations has been damaged as a result of the infringing conduct by Generac alleged above.  Thus, Generac is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

45.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Generac's infringement of the '830 patent.  Generac's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III. INFRINGEMENT OF U.S. PATENT NO. 7,304,570

46.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

47.     The USPTO duly issued U.S. Patent No. 7,304,570 (hereinafter, the "'570 patent") on

December 4, 2007, after full and fair examination of Application No. 11/200,611 which was filed on August 10, 2005. *See* '570 patent at 1. A Certificate of Correction was issued on November 4, 2008. *See id.* at 15.

48. IoT Innovations owns all substantial rights, interest, and title in and to the '570 patent, including the sole and exclusive right to prosecute this action and enforce the '570 patent against infringers and to collect damages for all relevant times.

49. The claims of the '570 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of context-based, hierarchical security for a mobile device.

50. The written description of the '570 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

51. Generac has directly infringed and continues to directly infringe one or more claims of the '570 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

52. Generac has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '570 patent, as detailed in **<u>Exhibit C</u>** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,304,570).

53. For example, as detailed in Exhibit C, the Accused Products include a system for providing context-based, hierarchical security for a mobile device, the system comprising: a

mobile device security database for storing a hierarchy of security instructions defining security actions for at least one of protecting data stored on a mobile device and preventing unauthorized use of the mobile device, wherein the hierarchy includes at least two security levels and each level includes at least one security instruction; and a mobile device security manager for, based on the security instructions stored in the mobile device security database, performing at least one security action associated with a first security level in response to the existence of a first context associated with the first security level and for performing at least one security action associated with a second security level in response to the existence of a second context associated with the second security level.

54.     Since at least the time of receiving the original complaint in this action, Generac has also indirectly infringed and continues to indirectly infringe the '570 patent by inducing others to directly infringe the '570 patent. Generac has induced end-users, including, but not limited to, Generac's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '570 patent by providing or requiring use of the Accused Products. Generac took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '570 patent, including, for example, claim 27 of the '570 patent. Such steps by Generac included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Generac is performing these steps, which constitute induced infringement with the knowledge of the '570 patent and with the knowledge that the induced acts constitute infringement. Generac is aware that the normal and customary use of the

Accused Products by others would infringe the '570 patent. Generac's inducement is ongoing.

55. Generac has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '570 patent. Generac has contributed to the direct infringement of the '570 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '570 patent, including, for example, claim 27 of the '570 patent. The special features constitute a material part of the invention of one or more of the claims of the '570 patent and are not staple articles of commerce suitable for substantial non-infringing use. Generac's contributory infringement is ongoing.

56. Generac had knowledge of the '570 patent at least as of the date when it was notified of the filing of this action.

57. Furthermore, on information and belief, Generac has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

58. Generac's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Generac.

59. Generac's direct infringement of one or more claims of the '570 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

60. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '570 patent.

61.     IoT Innovations has been damaged as a result of the infringing conduct by Generac alleged above.  Thus, Generac is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

62.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Generac's infringement of the '570 patent.  Generac's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV.  INFRINGEMENT OF U.S. PATENT NO. 7,593,428

63.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

64.     The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007.  *See* '428 patent at p. 1.

65.     IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

66.     The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve electronic communications by providing a

for the detection and discarding of corrupted data in a data packet using additional checksums.

67.     The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.     Generac has directly infringed one or more claims of the '428 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

69.     Generac has directly infringed, either literally or under the doctrine of equivalents, at least claim 14 of the '428 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,428).

70.     For example, as detailed in Exhibit D, Generac, through the use and provision of the Accused Products, performs a method comprising: receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

71.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '428 patent.

72.     IoT Innovations has been damaged as a result of the infringing conduct by Generac alleged above.  Thus, Generac is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V.  INFRINGEMENT OF U.S. PATENT NO. 7,974,260

73.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

74.     The USPTO duly issued U.S. Patent No. 7,974,260 (hereinafter, the "'260 patent") on July 5, 2011, after full and fair examination of Application No. 10/489,269.  *See* '260 patent at 1. A Certificate of Correction was issued on November 29, 2011.  *See id.* at p. 17.

75.     IoT Innovations owns all substantial rights, interest, and title in and to the '260 patent, including the sole and exclusive right to prosecute this action and enforce the '260 patent against infringers and to collect damages for all relevant times.

76.     The claims of the '260 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of timing controls among devices in a wireless network setting.

77.     The written description of the '260 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

78.     Generac has directly infringed and continues to directly infringe one or more claims of the '260 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

79.     Generac has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '260 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,260).

80.     For example, as detailed in Exhibit E, the Accused Products include a device comprising: a processor; a non-transitory computer-readable medium including computer-executable instructions stored thereon that, if executed by the processor, cause the processor to: define a data sequence, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and an antenna configured to transmit the defined data sequence in a data communication packet to the second device in a time defined contact slot.

81.     Since at least the time of receiving the original complaint in this action, Generac has also indirectly infringed the '260 patent by inducing others to directly infringe the '260 patent. Generac has induced end-users, including, but not limited to, Generac's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '260 patent by providing or requiring use of the Accused Products. Generac took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the

Accused Products in a manner that infringes one or more claims of the '260 patent, including, for example, claim 1 of the '260 patent. Such steps by Generac included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Generac is performing these steps, which constitute induced infringement with the knowledge of the '260 patent and with the knowledge that the induced acts constitute infringement. Generac is aware that the normal and customary use of the Accused Products by others would infringe the '260 patent. Generac's inducement is ongoing.

82.     Generac has also indirectly infringed by contributing to the infringement of the '260 patent. Generac has contributed to the direct infringement of the '260 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '260 patent, including, for example, claim 1 of the '260 patent. The special features constitute a material part of the invention of one or more of the claims of the '260 patent and are not staple articles of commerce suitable for substantial non-infringing use. Generac's contributory infringement is ongoing.

83.     Generac had knowledge of the '260 patent at least as of the date when it was notified of the filing of this action.

84.     Furthermore, on information and belief, Generac has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

85.     Generac's actions are at least objectively reckless as to the risk of infringing a valid

patent and this objective risk was either known or should have been known by Generac.

86. Generac's direct infringement of one or more claims of the '260 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

87. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

88. IoT Innovations has been damaged as a result of the infringing conduct by Generac alleged above. Thus, Generac is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

89. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Generac's infringement of the '260 patent. Generac's actions have interfered with and will interfere with Plaintiff's ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VI. INFRINGEMENT OF U.S. PATENT NO. 7,987,270

90. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

91. The USPTO duly issued U.S. Patent No. 7,987,270 (hereinafter, the "'270 patent") on July 26, 2011, after full and fair examination of Application No. 09/992,790, which was filed on

November 5, 2001. *See* the '270 patent at 1. A Certificate of Correction was issued on March 27, 2012. *See id.* at 13.

92. IoT Innovations owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

93. The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the communication between nodes in a wireless network using bearers.

94. The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

95. Generac has directly infringed and continues to directly infringe one or more claims of the '270 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

96. Generac has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 10 of the '270 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,987,270).

97. For example, as detailed in Exhibit F, Generac, through the use and provision of the Accused Products, performs a method for facilitating bearer setup of a network, the method comprising: selectably generating a first application-level bearer setup request to induce a bearer

manager to create a bearer between a first node and a second node, wherein the first bearer setup request is free of network address identifiers for the bearer manager; and providing the first application-level bearer setup request to a transport level AAA (Authentication Authorization Accounting) entity; and generating a second bearer setup request to induce the bearer manager to create the bearer between the first node and the second node.

98.     Since at least the time of receiving the original complaint in this action, Generac has also indirectly infringed the '270 patent by inducing others to directly infringe the '270 patent. Generac has induced end-users, including, but not limited to, Generac's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '270 patent by providing or requiring use of the Accused Products.  Generac took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '270 patent, including, for example, claim 10 of the '270 patent.  Such steps by Generac included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Generac is performing these steps, which constitute induced infringement with the knowledge of the '270 patent and with the knowledge that the induced acts constitute infringement. Generac is aware that the normal and customary use of the Accused Products by others would infringe the '270 patent.  Generac's inducement is ongoing.

99.     Generac has also indirectly infringed by contributing to the infringement of the '270 patent.  Generac has contributed to the direct infringement of the '270 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially

designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '270 patent, including, for example, claim 10 of the '270 patent. The special features constitute a material part of the invention of one or more of the claims of the '270 patent and are not staple articles of commerce suitable for substantial non-infringing use. Generac's contributory infringement is ongoing.

100.     Generac had knowledge of the '270 patent at least as of the date when it was notified of the filing of this action.

101.     Furthermore, on information and belief, Generac has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

102.     Generac's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Generac.

103.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '270 patent.

104.     IoT Innovations has been damaged as a result of the infringing conduct by Generac alleged above.  Thus, Generac is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII. INFRINGEMENT OF U.S. PATENT NO. RE44,742

105.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

106.     The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on

February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012. *See* '742 patent at 1. The '724 patent is a reissue of U.S. Patent No. 7,751,533. *See id.* at 12.

107. IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce the '742 patent against infringers and to collect damages for all relevant times.

108. The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template-based messaging systems.

109. The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

110. Generac has directly infringed and continues to directly infringe one or more claims of the '742 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

111. Generac has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 22 of the '742 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. RE44,742).

112. For example, as detailed in Exhibit G, Generac, through the use and provision of the Accused Products, performs a method comprising: determining, by a processing device, a message

to be generated from a message template; automatically populating, by the processing device, a dynamic field of the message template with message context data in response to the determination; and sending, by the processing device, the message having the message context data in the dynamic field of the message template to a remote device.

113. Since at least the time of receiving the original complaint in this action, Generac has also indirectly infringed the '742 patent by inducing others to directly infringe the '742 patent. Generac has induced end-users, including, but not limited to, Generac's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products. Generac took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. Such steps by Generac included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Generac is performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement. Generac is aware that the normal and customary use of the Accused Products by others would infringe the '742 patent. Generac's inducement is ongoing.

114. Generac has also indirectly infringed by contributing to the infringement of the '742 patent. Generac has contributed to the direct infringement of the '742 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that

infringe one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use. Generac's contributory infringement is ongoing.

115. Generac had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

116. Furthermore, on information and belief, Generac has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

117. Generac's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Generac.

118. Generac's direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

119. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

120. IoT Innovations has been damaged as a result of the infringing conduct by Generac alleged above. Thus, Generac is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

121. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to

suffer this harm by virtue of Generac's infringement of the '742 patent. Generac's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

122. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

123. IoT Innovations requests that the Court find in its favor and against Generac, and that the Court grant IoT Innovations the following relief:

    a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Generac or others acting in concert therewith;

    b. A permanent injunction enjoining Generac and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '830 patent, '570 patent, '260 patent, '270 patent, and '742 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

    c. Judgment that Generac accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Generac's infringing activities and other conduct complained of herein;

    d. Judgment that Generac's infringements be found willful as to '830 patent, '570 patent, '260 patent, '270 patent, and '742 patent, and that the Court award treble damages for

the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Generac's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>September 16, 2024</u>            Respectfully submitted,

By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff IoT INNOVATIONS LLC*

\* Admitted to the Eastern District of Wisconsin

**List of Exhibits.**

   A. Evidence of Use Regarding Infringement of U.S. Patent No. 6,801,933

   B. Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830

   C. Evidence of Use Regarding Infringement of U.S. Patent No. 7,304,570

   D. Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,428

   E. Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,260

   F. Evidence of Use Regarding Infringement of U.S. Patent No. 7,987,270

   G. Evidence of Use Regarding Infringement of U.S. Patent No. RE44,742

**List of Supporting Links**

1. U.S. Patent No. 6,801,933, USTPO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6801933.

2. U.S. Patent No. 7,280,830, USTPO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830.

3. U.S. Patent No. 7,304,570, USTPO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7304570.

4. U.S. Patent No. 7,593,428, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428.

5. U.S. Patent No. 7,974,260, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7974260.

6. U.S. Patent No. 7,987,270, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7987270.

7. U.S. Patent No. RE44,742, USPTO, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE4472.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY on this day, <u>September 16, 2024</u>, I caused to be electronically-filed the foregoing document with the Clerk of Court using the Court's CM/ECF system. As such, this document was served on all counsel who are deemed to have consented to electronic service.

<u>*/s/ James F. McDonough, III*</u>
James F. McDonough, III